* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are properly before the Industrial Commission and the Commission has jurisdiction of the parties and of the subject matter. *Page 2 
2. On March 28, 2005, the date of the injury by accident giving rise hereto, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On March 28, 2005, an employee-employer relationship existed between plaintiff and defendant-employer, with defendant-employer being insured by defendant-carrier at all relevant times during plaintiff's employment.
4. On or about December 28, 2005, defendants admitted plaintiff's right to receive compensation as a result of injuries suffered to her back on March 28, 2005.
5. Plaintiff received temporary total disability benefits from March 28, 2005 through January 17, 2006.
6. On or about January 17, 2006, defendant-carrier filed a Form 24 application to suspend payment of compensation.
7. On or about February 16, 2006, Special Deputy Commissioner Elizabeth M. Maddox filed an Administrative Decision and Order approving defendants' Form 24 application and authorizing defendants to suspend payment of compensation beginning January 17, 2006.
8. The issues for determination are:
 a. Whether plaintiff was justified in refusing work offered to her by defendant-employer?
 b. Whether plaintiff is entitled to temporary total disability benefits from January 17, 2006 to the present and continuing?
 * * * * * * * * * * * EXHIBITS
1. The parties stipulated the following documentary evidence: *Page 3 
 a. Stipulated Exhibit #1: I.C. Forms, medical records.
 b. Stipulated Exhibit #2: Plaintiff's average weekly wage (submitted subsequent to the hearing)
 c. Stipulated Exhibit #3: Additional medical records (submitted subsequent to the hearing)
2. In addition to Stipulated Exhibit(s), the following Exhibits were admitted into evidence:
 a. Plaintiff's Exhibit #1: Envelope from the Industrial Commission
 b. Plaintiff's Exhibit #2: Plaintiff/counsel Fee Agreement
 c. Defendants' Exhibit #1: Employee absentee report
 d. Defendants' Exhibit #2: Termination report
 * * * * * * * * * * *
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 57 years old and had completed the ninth grade.
2. Plaintiff began working part-time for defendant-employer in November 2004. In January 2005, plaintiff was rehired by defendant-employer as a full-time Press Operator. As a Press Operator, plaintiff's overall job function was to oversee the quality and quantity of plastic parts manufactured and packaged by defendant-employer. Plaintiff was required to place and remove parts from machinery, and her job duties included removing molds from a machine, cleaning the molds, and packing the molds in boxes. *Page 4 
3. On March 28, 2005, plaintiff sustained what is stipulated as a work-related injury by accident, suffering an injury to her low back while she was lifting and emptying a box filled with rejected parts. On December 28, 2005, defendants filed a Form 60 admitting plaintiff's right to compensation. Accordingly, defendants began paying plaintiff temporary total disability benefits at a rate of $316.00 per week and provided plaintiff with medical treatment for her work-related injury.
4. Following her injury, plaintiff was diagnosed with low back strain and was prescribed medication and home care. Thereafter, plaintiff treated with various physicians for continuing low back pain. On June 29, 2005, Dr. Craig Boatright diagnosed plaintiff with bilateral lower extremity radicular pain, no neurologic compression and very mild spondylosis. He recommended plaintiff consider therapeutic treatment options.
5. On September 6, 2005, plaintiff began treatment with Dr. David F. Rowe at the Carolinas Center for Advanced Management of Pain, Asheville, North Carolina. Dr. Rowe diagnosed plaintiff with myofascial pain in her bilateral lumbar parspinous musculature, and he recommended plaintiff consider physical therapy, continue with her medication, and receive trigger point injections for pain. Plaintiff thereafter obtained a Pain Patient Profile from Drs. C. David Tollison and Jerry C. Langley and a psychiatric evaluation from Dr. Donald W. Hinnant of the Carolinas Center for Advanced Management of Pain. Drs. Tollison and Langley noted plaintiff's test scores indicated she was more depressed than the average pain patient, and Dr. Hinnant diagnosed plaintiff with adjustment disorder and depressed mood. However, neither Dr. Tollison, Dr. Langley, Dr. Hinnant, nor Dr. Rowe opined that plaintiff's depressive state interfered with her ability to return to work. *Page 5 
6. Pursuant to the recommendation of Dr. Rowe, plaintiff obtained an FCE on November 29, 2005. The FCE indicated that plaintiff was authorized to lift three pounds from floor to thigh, 15 pounds from waist to shoulder, eight pounds from shoulder to overhead, and three pounds from 12 inches to waist. Plaintiff was also authorized to carry a maximum of 15 pounds. In addition, the FCE authorized plaintiff to engage in occasional bending, squatting, kneeling, reaching overhead, sitting, standing, walking, and ladder climbing. The FCE did not contain any restrictions regarding plaintiff's ability to climb stairs.
7. The FCE contains the stated question "Is worker able to return to present job" followed by boxes labeled "yes" and "no." The "no" box is checked. As there is no evidence in the record regarding upon what information this designation was based, the undersigned place little weight on this directive in comparison to the individual limitations contained in the FCE as enumerated above.
8. On December 6, 2005, Dr. Rowe reviewed the results of plaintiff's FCE and released her to return to work within the restrictions contained therein.
9. Prior to plaintiff's return to work, human resources officials and plaintiff's supervisor reviewed the restrictions of the FCE and assigned plaintiff to a Press Operator position in which she was required to handle and lift parts weighing only one to one and one-half pounds. As part of her job duties, plaintiff was required to remove parts from a machine by stepping onto a platform, opening a sliding door, and reaching into the machine. The door was not heavy enough to violate plaintiff's restrictions, its handle was below shoulder level, and the door could be opened easily with her arm still bent at the elbow. While this job has the same title as plaintiff's previous position, the undersigned find that the requirements of the position are within the individually enumerated restrictions contained in the FCE. *Page 6 
10. On December 19, 2005, plaintiff returned to work at defendant-employer. Shortly after beginning her Press Operator duties, plaintiff complained of back pain to her supervisor. Plaintiff was immediately re-assigned to a Rework position, in which she was required to sort, rehandle, and repackage rejected parts that weighed between one and one and one-half pounds. In the Rework position, plaintiff worked at a waist-level table, and chairs were made available so that plaintiff could sit and stand at-will.
11. Plaintiff maintains that when she arrived at the Rework position, there was only one chair and another disabled employee was using it. Plaintiff did not ask for another chair, but instead argues that because the one chair was in use, defendant-employer required her to stand throughout her shift. The undersigned find that there is no evidence to support plaintiff's argument. Rather, the presence of a chair for a disabled employee is indicative of the fact that a chair was available had plaintiff asked for one and that the job could be performed while in a seated position.
12. Shortly after beginning the Rework position, plaintiff complained to her supervisor that the Rework duties were also hurting her back. Plaintiff's supervisor explained that both the assigned Press Operator and Rework positions accommodated plaintiff's restrictions, and that there was no other light-duty work available with defendant-employer that day. Plaintiff thereafter voluntarily left defendant-employer's premises and did not return to work.
13. On January 17, 2006, defendants filed a Form 24 application seeking to terminate plaintiff's temporary total disability benefits due to her refusal to work in the offered light-duty positions. By Order dated February 16, 2006, Special Deputy Commissioner Elizabeth M. "Lacy" Maddox approved defendants' Form 24 application and authorized defendants to suspend *Page 7 
payment of compensation during the continuance of plaintiff's unjustified refusal to accept suitable work, effective January 17, 2006.
14. Both the Press Operator position and the Rework position offered to plaintiff and to which she returned on December 19, 2005, constituted suitable employment within the restrictions imposed upon plaintiff by the FCE and her authorized treating physicians, including Dr. Rowe.
15. Plaintiff's voluntary refusal to perform the jobs offered to her on December 19, 2005, and her failure to return to work in either position constitutes an unjustified refusal to accept suitable employment.
16. Pursuant to the Form 60 filed December 28, 2005, and the Administrative Decision and Order filed February 16, 2006, defendants paid plaintiff temporary total disability benefits in the amount of $316.00 per week, effective March 29, 2005, and continuing through January 16, 2006.
17. Pursuant to Stipulated Exhibit #2, plaintiff's average weekly wage at the time of her compensable injury was $491.50, yielding a compensation rate of $327.68 per week.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the undersigned concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury to her back as a result of a work-related accident arising out of and in the course of her employment on March 28, 2005. N.C. Gen. Stat. § 97-2(6).
2. As a result of her compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $327.68 per week from March 29, 2005 through January 16, 2006. N.C. Gen. Stat. § 97-29. *Page 8 
3. Defendants paid plaintiff temporary total disability compensation in the amount of $316.00 per week during the period for which she was entitled to benefits. The correct benefit amount is $327.68 per week. Therefore, plaintiff is entitled to the difference between the two amounts and a 10% penalty for late payment on the total amount still due. N.C. Gen. Stat. § 97-18.
4. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relieve, effect a cure, or lessen the period of disability, subject to the statute of limitations prescribed in N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. § 97-2(19).
5. Plaintiff's refusal to accept suitable employment within her restrictions was unjustified. Therefore, plaintiff's right to temporary total disability is suspended as of January 16, 2006. N.C. Gen. Stat. § 97-32.
 * * * * * * * * * * *
Based upon the foregoing Findings of Facts and Conclusions of Law, the undersigned enters the following:
 AWARD
1. Plaintiff's request for reinstatement of temporary total disability compensation subsequent to January 17, 2006, must be and is hereby DENIED.
2. Subject to a reasonable attorney's fee herein approved, defendants shall pay to plaintiff an amount equal to the difference between the amount paid and the actual compensation amount owed plus a 10% penalty for late payment on the total amount still due. *Page 9 
3. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in Paragraph 2 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel.
4. Defendants shall pay the costs.
This the 28th day of June 2007.
 S/_____________________________
 DIANNE C. SELLERS
 COMMISSIONER
 S/_____________________________ BUCK LATTIMORE COMMISSIONER
 S/_____________________________ PAMELA T. YOUNG COMMISSIONER *Page 1